Alan Harris (SBN 146079)
David Garrett (SBN 160274)
Priya Mohan (SBN 228984)
Min Ji Gal (SBN 311963)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
harrisa@harrisandruble.com
mgal@harrisandruble.com
pmohan@harrisandruble.com
dgarrett@harrisandruble.com
*Attorneys for Plaintiff JOSH DAY*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| JOSH DAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CORPORATE MANAGEMENT SOLUTIONS, INC., a California Corporation; NUCONTEXT CREATIVE, INC., a California Corporation; ANGELA GUICE, an individual; ANTHONY LOW, an individual; and DOE 1 through and including DOE 10,<br><br>Defendants. | Case No: 2:25-cv-07574-FMO-MAA<br>Assigned to Hon. Fernando M. Olguin<br><br>**FIRST AMENDED RULE 23 CLASS ACTION COMPLAINT—JURY TRIAL DEMANDED**<br><br>1. Cal. Lab. Code (the “Code”) §§ 201.3, 201.5, 201.6, 203, 204 and/or 204b Continuing Wages<br><br>2. Code § 226(a), Failure to Provide Complete Wage Statements, and Wage Orders 4 and/or 12<br><br>3. Code § 226.7, 512 and Wage Orders 4 and/or 12, Failure to Provide Rest Breaks and Meal Periods<br><br>4. Code § 510, 515, and 1194 and Wage Orders 4 and/or 12, Failure to Pay Proper Overtime<br><br>5. Code §§ 1194 and 1198 and Wage Orders 4 and/or 12, Failure to Pay Proper Minimum Wages<br><br>6. Code § 2802 and Wage Orders 4 and/or 12, Failure to Reimburse Business Expenses<br><br>7. Cal. Bus & Prof. Code §§ 17200 *et seq.*: Rest.<br><br>8. Code § 226(b), Payroll Records<br><br>9. Code § 1198.5, Personnel Records<br><br>10. Breach of Implied Employment Contract<br><br>11. Fair Labor Standards Act (“FLSA”), 29 U.S.C. §201 et seq. |

Plaintiff JOSH DAY ("Day" or "Plaintiff"), by and through his undersigned attorneys, alleges as follows:

## JURISDICTION AND VENUE

1. This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), and California law, to recover unpaid and untimely paid wages, unpaid minimum wage and overtime compensation, meal-period and rest-period premium wages, unreimbursed business expenses, statutory damages and penalties, restitution, and other relief authorized by law.

2. This Court has original jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's California claims under 28 U.S.C. § 1367(a) because those claims arise from the same employment relationship, production work, compensation practices, and related conduct underlying the FLSA claim and form part of the same case or controversy.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Los Angeles County, California, within this District, including Plaintiff's work on the Production and the employment practices challenged in this action.

4. Plaintiff brings his California class claims under Federal Rule of Civil Procedure 23 and his FLSA collective claim under 29 U.S.C. § 216(b).

## THE PARTIES

5. Plaintiff JOSH DAY is an individual, who, during the time periods relevant to this Complaint, was and is a resident of the State of California, routinely working within the County of Los Angeles.

6. Defendant CORPORATE MANAGEMENT SOLUTIONS, Inc. ("CMS") is a California Corporation, which at all times relevant herein, conducted business within the County of Los Angeles, State of California.

7. Defendant NUCONTEXT CREATIVE, INC. ("NCI") is a California Corporation, which at all times relevant herein, conducted business within the County of

Los Angeles, State of California. NCI co-produced a motion picture including filmed content for commercial distribution with BBC STUDIOS AMERICAS, INC. ("BBCA"), entitled Dancing With The Stars--"2224 ABC DWTS S31", during the industry standard work week of Sunday, August 14, 2022, to Saturday, August 20, 2022 ("hereinafter the Production"). Defendants Corporate Management Solutions, Inc. ("CMS") and Nucontext Creative, Inc. ("NCI") are referred to collectively as the "Corporate Defendants."

8. Defendant ANGELA GUICE, ("GUICE") is Founder, Owner, Director and Chief Executive Officer of NCI who, during the time periods relevant to this complaint, was and is a resident of the County of Los Angeles, State of California.

9. Defendant Anthony Low ("Low") is a Founder, Owner, Director and the Chief Executive Officer of CMS and resides in Los Angeles County, California. Defendants Angela Guice ("Guice") and Anthony Low ("Low") are referred to collectively as the "Individual Defendants." References to a particular defendant's conduct identify the defendant against whom that conduct is alleged.

10. Defendants Doe One through and including Doe Ten are sued herein under the provisions of section 474 of the California Code of Civil Procedure. Plaintiff is unaware of the true names, identities or capacities, whether corporate, individual or otherwise, of said fictitiously named Defendants, but leave of Court will be prayed to amend this pleading to insert the same herein when finally ascertained. Plaintiff is informed, believes and thereupon alleges that each of the fictitiously named Defendants is an entity, which during the relevant time period maintained a place of business in the County of Los Angeles of the State of California. Defendants CMS, NCI, GUICE, LOW, and Does One through and including Doe Ten are hereinafter collectively referred to as Defendants.

11. Defendants are "temporary services employers" as defined by California Labor Code (the "Code") § 201.3 and required to pay workers no less frequently than weekly. Section 201.3 provides, in part:

> **(a)** For purposes of this section, the following definitions apply:
> **(1)** "Temporary services employer" means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions:
> **(A)** Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services.
> **(B)** Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments.
> **(C)** Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer.
> **(D)** Assigns or reassigns workers to perform services for clients or customers.
> **(E)** Sets the rate of pay of workers, whether or not through negotiation.
> **(F)** Pays workers from its own account or accounts.
> **(G)** Retains the right to hire and terminate workers.
> . . .
> **(4)** "Client" and "customer" mean the person with whom a temporary services employer has a contractual relationship to provide the services of one or more individuals employed by the temporary services employer.
> . . .
> **(b)(1)(A)** Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision.
> . . .
> **(c)** A temporary services employer who violates this section is subject to the civil penalties provided for in Section 203 and to any other penalties available at law.
> **(d)** This section shall not be interpreted to limit any rights or remedies otherwise available under state or federal law.

Code § 201.3.

12. As a "temporary services employer," the Corporate Defendants act as an employing unit which contracts with clients to supply workers to perform services for the clients. The Corporate Defendants perform all of the following functions: (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services (see, e.g. Exhibits 1-3)[1]; (B) Determines assignments or reassignments of

---

[1] Exhibit 1 is a sample of an ad agency script and storyboards for a television commercial. Exhibit 2 is a partially redacted, typical Association of Independent Commercial Producer's ("AICP") Film Production Cost Summary for a Neutrogena commercial. A more recent AICP Form is attached as Exhibit 3.

workers, even if workers retain the right to refuse specific assignments; (C) Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer; (D) Assigns or reassigns workers to perform services for clients or customers; (E) Sets the rate of pay of workers, whether or not through negotiation; (F) Pays workers from its own account or accounts; and (G) Retains the right to hire and terminate workers. The Code section 203 liability of the Individual Defendants arises due to their responsibilities as persons covered by Code section 558.1.

13. At all relevant times mentioned herein, section 2810.3 of the Code provided:

> (a) As used in this section:
> (1) (A) "Client employer" means a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor.
> . . .
> (2) "Labor" has the same meaning provided by Section 200.
> (3) "Labor contractor" means an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business.
> . . .
> (4) "Wages" has the same meaning provided by Section 200 and all sums payable to an employee or the state based upon any failure to pay wages, as provided by law.
> (5) "Worker" does not include an employee who is exempt from the payment of an overtime rate of compensation for executive, administrative, and professional employees pursuant to wage orders by the Industrial Welfare Commission described in Section 515.
> (6) "Usual course of business" means the regular and customary work of a business, performed within or upon the premises or worksite of the client employer.
> (b) A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following:
> (1) The payment of wages.
> (2) Failure to secure valid workers' compensation coverage as required by Section 3700.
> (c) A client employer shall not shift to the labor contractor any legal duties or liabilities under Division 5 (commencing with Section 6300) with respect to workers supplied by the labor contractor.
> (d) At least 30 days prior to filing a civil action against a client employer for violations covered by this section, a worker or his or her representative shall notify the client employer of violations under subdivision (b).
> (e) Neither the client employer nor the labor contractor may take any adverse action against any worker for providing notification of violations or filing a claim or civil action.

> (f) The provisions of subdivisions (b) and (c) are in addition to, and shall be supplemental of, any other theories of liability or requirement established by statute or common law.

Code § 2810.3. BBCA and others were Client Employers.

14. Plaintiff is informed and believes and thereon alleges that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## GENERAL ALLEGATIONS

15. With respect to the Individual Defendants, Guice and Low, each a corporate officer and director of NCI and CMS respectively, as well as owners of the respective Corporate Defendants, they cannot simultaneously invoke the benefits of working with a corporate entity which employs other persons while disclaiming responsibility for determining whether the corporation's employment practices comply with California law or employing personnel who do so follow legal policies. Corporate officers such as the Individual Defendants must abide by California Corporations Code section 309 expressly requiring a director to exercise reasonable inquiry and the care that an ordinarily prudent person in a like position would exercise under similar circumstances. Thus, a corporate director must either participate in establishing, approving, or maintaining the corporation's wage-and-hour practices having undertaken reasonable inquiry into whether those practices comply with California law, or ensure that the relevant corporate body employs officers and others who do so. The Individual Defendants should be estopped to avoid the responsibilities of owners, Officers and Directors by claiming insulation by

reason of the corporate status of the Corporate Defendants and/or remoteness from the day to day activities of their respective entities.

16. Plaintiff seeks to hold Guice and Low personally liable for the covered wage-and-hour violations that each violated or caused to be violated while acting on behalf of an employer within the meaning of Labor Code section 558.1. Their liability is based on their respective participation in the challenged practices and their oversight of the persons implementing those practices, as alleged herein, rather than solely on their corporate titles.

17. As articulated in the Eleventh Cause of Action, Plaintiff separately alleges that Guice and Low qualify as employers under the FLSA based on their respective operational involvement in Plaintiff's employment, as further alleged herein.

18. This principle creates a straightforward dichotomy. If the owner, director and officer was unaware that the corporation's wage practices violated California law because the person failed to investigate the legal requirements governing the corporation's employees, that failure itself undermines the reasonable-inquiry and informed-decision responsibilities which arise from doing business in a corporate form and should be deemed to give rise to an estoppel to claim immunity from a person's responsibilities under the Business & Professions Code and the Labor Code. If, on the other hand, an owner, director and officer such as the Individual Defendants here knew that the practices violated California law and nevertheless approved, directed, or permitted them to continue, the conduct cannot reasonably be characterized as an innocent mistake. In either circumstance, Defendants Guice and Low are responsible for the violations alleged herein.

19. That analysis dovetails with Labor Code section 558.1. Section 558.1 imposes personal liability upon an owner, director, officer, or managing agent who, acting on behalf of the employer, "violates, or causes to be violated" the enumerated wage-and-hour laws. The relevant question is therefore not merely whether the individual occupied a corporate office, but whether the individual exercised sufficient authority and

participation in the corporation's employment practices to contribute to the violations. Where a director exercises authority over payroll, compensation, scheduling, employee classification, wage policies, or the managers responsible for those functions, the director's obligation to exercise informed corporate judgment necessarily encompasses reasonable inquiry into the laws regulating those activities.

20. Accordingly, evidence that an owner, director and officer established or maintained unlawful wage policies without determining whether those policies complied with California law supports the conclusion under Labor Code section 558.1 that the person's own exercise - or failure to exercise - corporate authority contributed to and thereby "caused" the underlying wage violations. An owner, director and officer cannot exercise authority over the corporation's labor practices when those practices increase profitability, yet disclaim responsibility for those same practices when they violate mandatory wage laws.

21. Defendants employed Plaintiff Day as a crew member on the Production on August 15, 16, and 17, 2022, during the industry standard workweek beginning Sunday, August 14, 2022, and ending Saturday, August 20, 2022. Plaintiff alleges that his wages for that workweek were due no later than Friday, August 26, 2022, under the payment requirements applicable to his employment. His paycheck was not prepared until September 9, 2022, or later. The September 9, 2022 wage statement identifies a partial payment for his work on the Production. That payment did not include all compensation Plaintiff alleges was earned. In particular, Plaintiff alleges that he was not paid the meal-period and rest-period premium wages described below and was not compensated for all compensable work. Plaintiff has never been paid a premium wage on account of Defendants' failure to provide compliant rest breaks or meal periods. For his services during the workweek ending August 20, 2022, as a crew member for the Production, Defendants were required to pay him by the next week, on or before August 26, 2022. However, dehors the most expansive requirements of Code §204, Plaintiff Day's paycheck was not prepared until on or after September 9, 2022. **Exhibit 4.1** is the wage

statement dated September 9, 2022, issued to Day. This document reflects a partial payment of wages owed for Plaintiff's work on the Production. **Exhibit 4.2** consists of the Call Sheets for the Production, which outline the prelight and filming schedule for August 16-17, 2022. **Exhibit 4.3** consists of Call Sheets dated July 13 and July 14, 2024, identifying CMS Productions as the production company and Guice as Executive Producer.

22. Plaintiff was not paid for all hours worked and was paid in tardy fashion. That payment did not include all compensation Plaintiff alleges was earned. In particular, Plaintiff alleges that he was not paid the meal-period and rest-period premium wages described below and was not compensated for all compensable work.

23. Although Plaintiff Day should have been paid in full for his accrued wages, provided proper, uninterrupted meal periods and rest breaks, and issued final wages no later than as required by Code §§ 201, 201.3, 201.5, 201.6 and/or 204, wages remain unpaid in the full amount owing. The final payment did not fully compensate Plaintiff for all outstanding wages. Plaintiff and Class Members have as of the date of filing of this Complaint not been fully compensated for work performed for the Defendants. On information and belief, Defendants never paid any of their employees a premium wage on account of a missed, tardy, combined or truncated rest break, an unlawful business practice. See, Safeway v. Sup. Ct., 238 Cal. App. 4th 1138 (2015).

24. Plaintiff and crew members have not been paid accrued premium wages owing for the non-provision of compliant meal periods and rest breaks, as required by Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024)("section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay.") Wage Order 4, applicable to photographers, provides that "[no] employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." Wage Order 12, applicable to those in the motion picture industry, provides that: "No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than 30 minutes, nor

more than one (1) hour." Each Wage Order provides that "[t]ime records showing when the employee begins and ends each work period. Meal periods . . . and total daily hours worked shall also be recorded." ¶7(A)(3).

25. Plaintiff and Class Members were required to keep their walkie talkie radios and/or cell phones with them at all times, including during meal and rest breaks. Some breaks were simply not provided at all. Under Augustus v. ABM Sec. Servs. Inc., 2 Cal. 5th 257, 260 (2016), this policy denied Plaintiff and others the ability to take legally compliant meal and rest breaks as required by California law. **Exhibit 5** hereto is a partially redacted sample of call sheets for other California Motion Pictures, reflecting the industry practice of assigning specific walkie talkie channels to different departments, enabling ready communication by department when necessary and broad communications to all departments or groups of departments on other occasions.

26. Upon information and belief, CMS, NCI, GUICE, and LOW were joint employers of Plaintiff Day and Class Members. Employees and/or representatives of CMS, NCI, GUICE, and LOW were on location and worked alongside Plaintiff and Class Members, directing their work, providing feedback and making final decisions. They gave specific instructions on the manner in which work was to be completed and reviewed and approved such work. They had creative and operational authority over the Production and Plaintiff's job.

27. Guice participated in communications concerning the Production during the workdays at issue. She was copied on emails sent to the Production's crew, including Plaintiff, on August 15, 16, and 17, 2022.

28. The August 15, 2022, prelight call sheet listed Guice with a 2:00 p.m. call time. The August 16 call sheet identified her by name but did not state individual crew call times. The August 17 call sheet identified her as "O[n]/C[all]."

29. Guice's role at NCI included supervision of its creative team and production activities. Her public description of her work included substantial on-set involvement with production crews.

30. As sole Founder and Executive Producer of NCI, GUICE personally oversees and supervises NCI's creative team and the productions NCI undertakes, including the Production at issue here. See NuContext, About, https://adsofbrands.net/en/agencies/ nucontext/3639/about (last visited Sept. 8, 2026) ("The agency's experienced creative team, under Angela's supervision, works closely with each of its clients to help them conceive, implement and realize their vision.").

31. Guice has publicly confirmed that her role at NCI is one of hands-on, personal operational involvement, not merely nominal ownership. In a December 2022 podcast interview, Guice stated that her "job is usually being on set with at least 100 people," and that when productions were disrupted, she personally devised the operational solutions by which NCI's shoots would proceed. See The Speaking Your Brand Podcast, Thriving as a Woman in Business with Angela Guice, Episode 308 (Dec. 19, 2022), transcript at 00:16:20–00:17:53.

32. Guice's personal receipt of crew communications concerning the Production, her presence on the Production's call sheets for each of the days at issue, her own admission that her role requires her personal, on-set presence overseeing large crews, and her personal oversight of NCI's productions establish that Guice had actual knowledge of, and personal involvement in, the scheduling and staffing decisions that resulted in the Labor Code violations alleged herein, including the failure to timely pay wages and the failure to provide compliant meal and rest periods.

33. After the Production on which Day provided services, NCI, CMS, Low and Guice continued to work together in film production. For example, a Call Sheet dated July 13, 2024, sports "CMS Productions" as the "Prod[uction] Co." and Guice as the Executive Producer with other NCI employees working under her, the Associate Producer and the Talent Producer each with NCI emails and the Talent Producer with a 7:30 a.m. Call Time. Exhibit 4.3 is an email forwarding the Call Sheet and other materials to various crewmembers dated July 13 and July 14, 2024, identifying CMS Productions as the production company and Guice as Executive Producer.

34. During the Day Production in 2022 and thereafter until at least 2024, Guice had scheduling, staffing, and supervisory responsibility. She was aware of and approved practices of collecting payroll time card information as well as oversight of responsible personnel concerning the required response to radio and telephone calls during faux breaks, the scheduling of meal periods which were confined to the job site as on-duty meals, the restrictions on workers, requiring they remain at or near the set, the failure to record grace on time records, and other practices relating to rounding when recording meal periods. The vast majority of Defendants' faux meal breaks were either exactly thirty or exactly sixty minutes, leading to an inescapable conclusion that crew time cards were rounded rather than reflective of the true out times and in times when crew returned to work. Plaintiff and the crews were unable to enjoy compliant duty-free meals during which time they might leave the set entirely to enjoy moments away from work. Accordingly sums withheld from Plaintiff's and other crew wages for faux meal breaks and repaid, whether at straight time rates when the total work from the call time to wrap was less than eight hours, or at overtime or double time rates as the case may be.

35. Defendant Low's role at CMS likewise goes well beyond nominal ownership. Low founded CMS and has been its sole owner, with no partners as of 2018. (Deposition of Anthony Low, Feb. 5, 2018 ("Low Depo"), 25:9-19.) Low has personally testified, under oath, that his function at CMS is to provide "part-time CFO and COO services" to entertainment production clients (Low Depo 25:18-22), and that CMS's business model makes CMS an entity that personally controls the release of crew wages: CMS contracts directly with the production company, invoices the production company for the exact amount of the approved payroll once the production company reviews and approves the crew's timecards, and only "[o]nce it's approved by the production company" does CMS notify the payroll company that payment has been received so that "they release the payroll" to the crew. (Low Depo 41:20-25, 42:1-12.) The funds the payroll company then disburses to crew as wages are drawn via ACH directly from CMS's own general business bank account, maintained at Bank of America. (Low Depo

42:13-25, 43:1-8.) Low has further testified that when a production company's payment to CMS was delinquent, causing a delay in the release of crew wages, he personally, individually telephoned the production company's and the advertising agency's representatives multiple times himself to demand payment of the outstanding invoices, which he confirmed included "the funds to be paid to the crew as salaries." (Low Depo 53:25, 54:1-25, 55:1-25.) This admitted practice and role establish that Low personally controls, and personally intervenes in, the very financial mechanics, approval, invoicing, and release of payment, that determine whether and when crew members such as Plaintiff and Class Members are paid their wages. In 2022, Low continued to approved, maintain, and supervise the convoluted procedures required to produce payroll checks, practices which required several unrelated individuals working on set, at CMS, at NCI, and at the Burbank Payroll Company to review pages of documents to determine the proper amounts owing for taxes, union payments, fees and other charges before final checks could be provided to crewmembers such as Day and others. These defense practices result in the inevitable late payments of wages to the workers.

36. At all relevant times mentioned herein, Wage Order 4 and/or 12 of the California Industrial Welfare Commission applied to Plaintiff and Class Members. In part, the Wage Order reflects employer obligations regarding hours and days of work, reporting time pay, records, meal periods and rest periods (obligations which the employer, here, failed to fulfill). Wage Order 12 provides, in relevant part:

> **3. Hours and Days of Work.**
> (A) Daily Overtime - General Provisions
> (1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1.5) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime as follows:
> (a) Employees may be employed up to a maximum of sixteen (16) hours including meal periods in any one day from the time they are required and

do report until dismissed, provided the employee is compensated for such overtime at not less than:

(1) For daily employees and weekly employees, excluding weekly employees guaranteed more than forty (40) hours a workweek and "on call" employees, one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any one workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

(2) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any workday, and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(3) Overtime payments shall not be compounded and all payments made by the employer for daily overtime on the basis herein above specified shall be applied toward any sum for weekly overtime.

(4) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one fortieth (1/40) of the employee's weekly salary.

. . .

**7. Records.**

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

. . .

**11. Meal Periods.**

(A) No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all employees shall be called not later than six (6) hours after the termination of the preceding meal period.

(B) Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.
(C) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.
(D) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.
**12. Rest Periods.**
(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3.5) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Code of Regs., tit. 8, § 11120 ("Wage Order 12").

37. At all times relevant herein, section 201.5 of the Code provided in part:

(a) For purposes of this section, the following definitions apply:
(1) "An employee engaged in the production or broadcasting of motion pictures" means an employee to whom both of the following apply:
(A) The employee's job duties relate to or support the production or broadcasting of motion pictures or the facilities or equipment used in the production or broadcasting of motion pictures.
(B) The employee is hired for a period of limited duration to render services relating to or supporting a particular motion picture production or broadcasting project, or is hired on the basis of one or more daily or weekly calls.
(2) "Daily or weekly call" means an employment that, by its terms, will expire at the conclusion of one day or one week, unless renewed.
(3) "Next regular payday" means the day designated by the employer, pursuant to Section 204, for payment of wages earned during the payroll period in which the termination occurs.
(4) "Production or broadcasting of motion pictures" means the development, creation, presentation, or broadcasting of theatrical or televised motion pictures, television programs, commercial advertisements, music videos, or any other moving images, including, but not limited to, productions made for entertainment, commercial, religious, or educational purposes, whether these productions are presented by means of film, tape, live broadcast, cable, satellite transmission, Web cast, or any other technology that is now in use or may be adopted in the future.
(b) An employee engaged in the production or broadcasting of motion pictures whose employment terminates is entitled to receive payment of the

> wages earned and unpaid at the time of the termination by the next regular payday.
> (c) The payment of wages to employees covered by this section may be mailed to the employee or made available to the employee at a location specified by the employer in the county where the employee was hired or performed labor. The payment shall be deemed to have been made on the date that the employee's wages are mailed to the employee or made available to the employee at the location specified by the employer, whichever is earlier.
> (d) For purposes of this section, an employment terminates when the employment relationship ends, whether by discharge, lay off, resignation, completion of employment for a specified term, or otherwise.
> (e) Nothing in this section prohibits the parties to a valid collective bargaining agreement from establishing alternative provisions for final payment of wages to employees covered by this section if those provisions do not exceed the time limitation established in Section 204.

Code § 201.5. Code §201.3 and 201.6 are of similar import, albeit with differences.

38. Defendants employed individuals such as Plaintiff and Class Members to work on the Production, yet Defendants failed to timely and/or fully pay them, all in violation, inter alia, of Code sections 201, 201.3, 201.5, 201.6, 204 and/or 204b.

39. At all relevant times mentioned herein, section 203 of the Code provided:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until action therefore is commence; but the wages shall not continue for more than 30 days.

Code § 203. By failing to pay Plaintiff and Class Members all wages when due at termination in accord with the statutory scheme, Plaintiff and Class Members are entitled to continuing wages pursuant to section 203 of the California Labor Code.

40. At all times relevant herein, section 204 of the Code provided in part:

> All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Code § 204.

41. At all times relevant herein, section 204b of the Code provided in part:

> Section 204 shall be inapplicable to employees paid on a weekly basis on a regular day designated by the employer in advance of the rendition of services as the regular payday.
>
> Labor performed by a weekly-paid employee during any calendar week and prior to or on the regular payday shall be paid for not later than the regular payday of the employer for such weekly-paid employee falling during the following calendar week.
>
> Labor performed by a weekly-paid employee during any calendar week and subsequent to the regular payday shall be paid for not later than seven days after the regular payday of the employer for such weekly-paid employee falling during the following calendar week.

Code § 204b. The Defendants' policy has been to devote insufficient resources to the payroll accounting function and/or to insufficiently fund the Production, with the inevitable result that employees are routinely paid in tardy fashion, in violation of sections 201.3, 201.5, 201.6, 203, 204 and/or 204b of the Code, and otherwise in violation of the Code.

42. In no event should Plaintiff or Class Members have been paid later than the time periods established by sections 201.3, 201.5, 201.6, 204 and/or 204b of the Code, but certain payments to Plaintiff were made after they were due, all leading to penalties under sections 203 and 204 and/or 204b of the Code. Code section 558.1 expressly includes section 203. The Individual Defendants as well as the Corporate Defendants are liable for penalties because their supported conduct caused the actionable failure to pay on time.

43. With respect to the wage-statement, break, overtime, minimum-wage, and expense-reimbursement claims, Code section 558.1 also provides an avenue for establishing personal liability of the Individual Defendants. Code sections 226.7, 512 and Sections 4 and 12 of the Wage Order require an employer to pay an additional hour of compensation for each meal period the employer fails to provide. Section 11 of Wage Order 12 requires that "No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all employees shall be called not later than six (6) hours after the termination of the preceding meal period." Defendants failed to

maintain a policy informing all Class Members of these rights and failed to fulfill their obligations under section 7 of the Wage Order, requiring employers to maintain "accurate information with respect to each employee including the following: . . . [t]ime records showing when the employee begins and ends each work period. Meal periods . . . and total daily hours worked shall also be recorded."

44. Here, Defendants failed to apprise all Class Members of their rights associated with meal periods and failed to provide timely meal periods. Defendants have had a consistent policy of: (1) requiring all Class Members to take late meal breaks that occurred after the first 6 hours of each shift; (2) requiring Class Members to work shifts over 12 hours without providing a second meal period of 30 minutes in length; and (3) failing to pay such employees 1 hour of pay at the employees regular rate of compensation for each workday in which a proper meal break was not provided. At all relevant times mentioned herein, section 226.7 of the Code provided:

> (a) As used in this section, "recovery period" means a cooldown period afforded an employee to prevent heat illness.
>
> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Code § 226.7.

45. At all relevant times mentioned herein, section 226 of the Code provided:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare

> Commission, (3) the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.
>
> . . . .
>
> (e) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.
>
> . . . .
>
> (g) An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees.

Code § 226.

46. Defendants employed Plaintiff and Class Members, but, in all cases, Defendants failed to provide them with the data required by section 226(a) of the Code. The wage statement failed to report accrued, premium wages owing for non-provision of compliant rest periods or meal breaks. Specifically, the wage statements did not reflect the correct premium wages owed for missed, late, or shortened meal periods, as required by law. All of the foregoing was intentional misconduct of Defendants that injured Plaintiff and Class Members insofar as they were subjected to confusion and deprived of information to which they were legally entitled. Naranjo v. Spectrum Security Services, 13 Cal. 5th 93 (2022). Exhibit 4.1.

47. At all relevant times mentioned herein, section 510(a) of the Code provided:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of at least one and one-

> half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

Code § 510.

48. Class Members were not timely paid proper overtime wages to which they were entitled in violation of Code §§ 510, 515 and 1194. Both late payment and nonpayment of overtime wages for all hours worked violate the overtime wage statute. Defendants are subject to the penalties for failing to pay each Class Member their overtime wages.

49. Section 512(a) of the Code provides, in part: "(a) An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Section 512(b)(1) of the Code provides, in part: "the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work." Code § 512(a) and (b)(1).

50. At all relevant times mentioned herein, section 1194 of the Code provided:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Code § 1194.

51. At all relevant times mentioned herein, section 2802 of the Code provided in part:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . .
> (b) All awards made by a court . . . for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.

> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing rights granted by this section.

Code § 2802. Defendants failed to reimburse Plaintiff and Class Members for necessary business expenses incurred in the performance of their duties, such as for the use of a personal cell phone and for other motion picture equipment and supplies.

52. As part of the implied employment contracts between each Plaintiff and Class member, on the one hand, and Defendants, on the other, the Parties agreed that the employees would promptly respond to any cellphone or walkie talkie calls they received, and each Plaintiff and Class Member routinely did so, whether or not on a faux "rest break" or "meal period," whether or not "on the clock" or before call time or after wrap.

53. Most major producers reimburse workers for their expense in maintaining personal cellphones. See **Exhibit 6**, a partially redacted group exhibit showing such daily reimbursements by other motion picture companies in Los Angeles County.

54. It is "an employer's duty . . . to maintain accurate records of its employees' hours" and that duty "is non-delegable." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011). Although Kuebel establishes that it is solely the employer's duty to keep track of hours worked under the federal FLSA, and although Plaintiffs' wage-and-hour claims are largely brought under the state law, the fact remains that Defendants, at all times, were subject to the FLSA and therefore were themselves required to keep track of Plaintiffs' hours worked. See Troester v. Starbucks Corp., 5 Cal. 5th 829, 839 (2018) (explaining that, although California's wage-and-hour laws are "more protective than federal law" and that "California is free to offer [employees] greater protection," the FLSA "provide[s] a level of employee protection that a state may not derogate"). Troester, 5 Cal. 5th at 846 ("Nor is it clear why, when it is difficult to keep track of time worked, the employee alone should bear the burden of that difficulty"), 848 ("An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs. And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably

estimate work time . . . and to compensate employees for that time.”). Marlo v. United Parcel Serv., Inc., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *3 (C.D. Cal. May 5, 2009), explains that, under California law, “employers must keep track of the hours . . . employees work.” Before an employee starts to work for an employer, the employer is required to have the employee fill out the requisite new-hire paperwork. See e.g. Ketchikan Drywall Servs., Inc. v. Immigration & Customs Enforcement, 725 F.3d 1103, 1113 (9th Cir. 2013) (stating that 8 U.S.C. § 1324a “clearly makes employers responsible for documenting employee work authorization” and that, “[w]here [a defendant] cho[oses] to hire employees who ha[ve] failed to fill out [s]ection 1 [of I-9 Forms] completely, it d[oes] so at its own peril”); 26 C.F.R. § 31-3402(f)(2)-1 subsec. (a) (stating that a withholding-exemption certificate must be completed “[o]n or before the date on which an individual commences employment”); 22 Cal. Code Regs. § 4340-1(a) stating that a withholding-exemption certificate must be completed “[o]n or before the date on which an individual commences employment”). If, for example, the employee fails to complete the necessary tax documents, the employer must follow the guidance from the Internal Revenue Service and the California Employment Development Department by withholding taxes as if the employee is single with no withholding allowances. See Internal Revenue Serv., *Topic Number 753 – Form W-4 – Employee's Withholding Allowance Certificate* (last updated Mar. 1, 2018), https://www.irs.gov/taxtopics/tc753. There is an analogous cite from the California EDD (re defaulting to the single-no-allowances rule): Cal. Emp't Dev. Dep't, *Employer's Obligations for Form W-4 or DE 4* (2016), https://www.edd.ca.gov/ pdf_pub_ctr/de71.pdf).

55. As part of the employment contracts between each Plaintiff and Class member, on the one hand, and Defendants, on the other, the Parties agreed that their contract had an implied covenant of good faith and fair dealing.

56. As part of the implied employment contracts between each Plaintiff and Class member, on the one hand, and Defendants, on the other, the Parties agreed that the employees would promptly respond to any cell phone or walkie talkie calls they received,

and each Plaintiff and Class Member routinely did so, whether or not on a faux "rest break" or "meal period."

57. As part of the implied employment contracts between each Plaintiff and Class member, on the one hand, and Defendants on the other, when filming within the jurisdictions subject to FilmLA, in which, on information and belief, perhaps half of the Productions here at issue were filmed, the Parties agreed that the employees would abide by the conditions in the FilmLA Film Permits issued to Defendants, permitting the scheduled work. Those Film Permits routinely required compliance with a "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"), a copy of the version issued in 2019 is attached hereto as **Exhibit 7**. That LA Code provides, in part, for regulation of employer conduct before reporting to work and going on the clock, before the start of the day is regulated, but not compensated:

> 1. The production company must comply with the provisions of the film permit at all times.
> 2. The Filmmakers' Code of Professional Responsibility will be attached to every permit, and both must be shown to any member of the public that asks to see them.
> 3. Productions arriving on-location in or near a residential neighborhood shall enter the area no earlier than the time stipulated on the permit.
> . . .
> 5. Cast and crew must observe designated parking areas. Parking of cast and crew vehicles on public streets is prohibited unless authorized by the film permit.
> 6. Parking on both sides of public streets is prohibited unless specifically authorized by the film permit.
> 7. Production vehicles may not block driveways without the express permission of the local municipality or the driveway owner.

Exhibit 7 (https://filmla.com/wp-content/uploads/2019/07/Filmmakers-code-of-coduct-2019.pdf., last accessed August 2, 2024).

58. Another, later version issued by FilmLA is to the same effect. **Exhibit 8**, for example, states:

> Meals must be confined to the area designated in the location agreement or permit. Individuals must eat within the designated meal area.

Exhibit 8, ¶ 6.

59. In addition, there is a "California Film Commission Filmmakers Code of

Conduct" (the "CA Code") such as attached hereto as **Exhibit 9**. That CA Code provides, in part, that worker activity before the start of the day is regulated, but not compensated:

> 2. Production vehicles arriving on location in or near a residential neighborhood should not enter the area before the time stipulated in the permit, should park one by one, and turn off engines as soon as possible. Cast and crew should observe designated parking areas.

Exhibit 9, p. 1 (https://cdn.film.ca.gov/wp-content/uploads/2020/11/Professional-Filmmakers-Code-of-Conduct.pdf).

60. As part of the implied employment contracts between each Plaintiff and Class member, on the one hand, and Defendants on the other, the Parties agreed that all employees, whether or not in a union, would honor calls for "grace" to permit filming to continue beyond the sixth or twelfth hour of work as the case may be, and each Plaintiff and Class Member routinely did so, whether or not a meal break had been scheduled. The applicable CBA for union members working on commercials provides that "[t]he first deductible meal period may be extended by fifteen (15) minutes to complete a set-up and a second deductible meal period may be extended by thirty (30) minutes to complete a set up and/or wrap."[2] These provisions do not apply to non-union workers such as Plaintiffs, yet industry practice demands all workers follow the procedures for grace. In any event, grace is routinely called and non-union workers have their meals often delayed beyond the sixth hour of work, without compensation by the Defendants for such untimely meals. Defendants regularly established record-keeping procedures note when grace is called, and in the course of discovery these materials will be accessed so that Plaintiffs might amend this Complaint to articulate precise details relating to these practices.

61. As part of the implied employment contracts between each Plaintiff and Class member, on the one hand, and Defendants on the other, the Parties agreed that all

[2] See 2019 Commercial Production Agreement and Northeast Corridor Appendix [the I.A.T.S.E [the International Alliance Of Theatrical Stage Employees, Moving Picture Technicians, Artists And Allied Crafts Of The United States And Canada, AFL-CIO, CLC – A.I.C.P. [Association Of Independent Commercial Producers, Inc.,], Article XVIII- MEALS, Section 3, p. 11.

employees would remain on or near the designated set, from their initial report time until final wrap for the day. According to the Commercial Filmmakers' Code of Professional Responsibility: "5. Cast and crew meals shall be confined to the area designated in the location agreement or permit." **Exhibit 10**, https:// aicp.com/ assets/editor/AICP_ Location_Code_of_Professional_Responsibility_members_June2017.pdf (last accessed August 2, 2024). This policy and practice is articulated in the LA Code:

> Cast and crew are to remain on or near the area that has been permitted. . . . . . .
> If not specified in the permit, an area for meal service and consumption must be designated.

Exhibit 10. ¶9.

62. A Warner Bros. "Filmmakers Code of Professional Responsibility" provides, in part, that:

> "5. Cast and crew meals shall be confined to the area designated in the location agreement or permit. Individuals shall eat within their designated meal area, during scheduled crew meals." Further: "11. . . . Remain within the boundaries of the property that has been permitted for filming."

**Exhibit 11**.

63. Exhibits 7-11 reflect industry practices in the filming of Motion Pictures in California, both television commercials and otherwise.

64. At all relevant times mentioned herein, section 1194 of the Code provided:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Code § 1194.

65. At all relevant times mentioned herein, section 558 of the Code provided:

> Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred

> dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee.

Code § 558. Defendants are the employers or other persons acting on behalf of an employer who violated, or caused to be violated the relevant sections of the Code referenced herein.

66. At all relevant times mentioned herein, section 558.1 of the Code provided:

> (a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.
> (b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.
> (c) Nothing in this section shall be construed to limit the definition of employer under existing law.

Code § 558.1. Upon information and belief, Defendants were joint employers or other persons acting on behalf of an employer who violated, or caused to be violated the relevant sections of the Code referenced herein. Defendants directly and/or indirectly controlled the Class Members' wages, working conditions and hours and were responsible for the policies or lack of policies that caused the Code violations.

## CLASS-ACTION ALLEGATIONS

67. Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Rule 23(B)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent a Class composed of and defined as follows:

> Save full-time Staff personnel, all persons (including both exempt and non-exempt and union and non-union employees, as well as those working through Loan-Out companies) paid wages on account of services provided for Defendant NCI in the production of Still Photography and/or Motion Pictures in California during the period beginning no earlier than four years prior to the August 13, 2025, filing of the initial Complaint to the date of a decision on a Motion for Class Certification (such persons are referred to as "Class Members," and such period is referred to hereafter as the "Class Period").

68. Plaintiff seeks to represent a class consisting of all persons, excluding full-time staff personnel, who were paid wages for services provided to NCI in still-photography and/or motion-picture production in California from August 13, 2021, through the date of the Court's decision on class certification. The proposed class includes exempt and nonexempt employees, union and nonunion employees, and employees working through loan-out companies.

69. Plaintiff seeks relief under each cause of action only for class members covered by the substantive provisions governing that claim. Where necessary, Plaintiff seeks certification of appropriate subclasses reflecting differences in the applicable claims, employment classifications, and payment practices.

70. This action has been brought and may be properly maintained as a class action under the provisions of Rule 23(b)(3) of the Federal Rules of Civil Procedure because, with respect to the proposed Class, common questions of law and fact predominate over any questions affecting only individual members. A Rule 23(b)(3) action is superior to other available methods for fairly and efficiently adjudicating the controversy.

71. Defendants, as to Plaintiff and Class Members, failed to pay all accrued overtime for all hours worked pursuant to sections 510 and 1194 of the Code. Accordingly, each Plaintiff and Class Member is entitled to payment of his or her unpaid overtime and interest as well as reimbursement of their attorneys' fees and reasonable costs.

72. Defendants, as to Plaintiff and Class Members, also failed to accurately provide the data required by section 226(a) of the Code and, accordingly, Defendants' failure to provide such data entitles Plaintiff and each Class Member to either actual damages or statutory liquidated damages, whichever is greater. See, e.g., Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024) ("section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay.")

73. Defendants, as to Plaintiff and Class Members, failed to timely compensate the workers as required by sections 201.3, 201.5, 201.6, 203, 204 and/or 204b of the Code and, accordingly, Defendants' failure to make timely payment entitles Plaintiff and each Class Member to statutory penalties and/or damages.

74. Defendants, as to Plaintiff and Class Members, failed to provide meal and rest breaks as required by sections 226.7, 512 of the Code and Wage Order 4 and/or 12, and, accordingly, Defendants' failure to provide meal and rest breaks entitles Plaintiff and Class Members to actual damages and/or statutory damages.

75. Plaintiff alleges that the applicable wage order required the provision of timely, compliant meal periods and authorized and permitted rest periods. To the extent different employees or assignments are governed by different wage orders, Plaintiff pleads the applicable requirements in the alternative. Plaintiff's allegations also concern the failure to relieve employees of work responsibilities during purported breaks and the failure to pay resulting compensation.

**A. Numerosity**

76. The potential members of each Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that Defendants employed during the relevant time periods at least one hundred workers in the State of California. The number of Class Members is great, but not so great as to make the class unmanageable. It therefore is impractical to join each Class Member as a named plaintiff. Accordingly, utilization of a class action is the most economically feasible means of determining the merits of this litigation.

77. Despite the size of the proposed Class, the Class Members are readily ascertainable through an examination of the records that Defendants and/or their payroll companies are required by law to keep. Likewise, the dollar amount owed to each Class Member is readily ascertainable by an examination of those same records.

**B. Commonality**

78. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants failed to pay all wages in a timely fashion upon the discharge of their workers, all in violation of sections 201.3, 201.5, 201.6, 204, and/or 204b as well as 203 of the Code.
b. Whether Defendants' failure to provide accurate itemized wage statements to their workers violates section 226(a), as required by the Code as well as Wage Orders 4 or 12.
c. Whether Defendants failed to provide meal breaks to their workers as required by the Code as well as Wage Orders 4 or 12.
d. Whether Defendants failed to provide rest breaks to their workers, as required by the Code as well as Wage Orders 4 or 12.
e. Whether Defendants failed to pay proper minimum wages to their workers under Code sections 1194 and 1194.2, as well as Wage Orders 4 or 12.
f. Whether Defendants failed to pay proper overtime wages to their workers Production under Code sections 510, and 1194, as well as Wage Orders 4 or 12.

**C. Typicality**

79. There is a well-defined community of interest in the questions of law and fact common to the Class Members.

80. The claims of the named Plaintiff are typical of the claims of the Class, which claims all arise from the same general operative facts, namely, Defendants did not compensate their employees as required by the Code and applicable Wage Order. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by the Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein. Plaintiff has no conflict of interest with the other Class Members and is able to represent the Class Members' interests fairly and adequately.

**D. Adequacy of Representation**

81. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. The counsel who represent Plaintiff are competent and experienced in litigating large employment class actions. E.g., Bithell v. E.P. Mgmt. Servs., 2007 Cal. App. Unpub. LEXIS 9706, *3 (2006). Neither Plaintiff nor Plaintiff's counsel have any conflict with the Class.

**E. Superiority of Class Action**

82. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each member of the Class has been damaged and is entitled to recovery by reason of Defendants' illegal policy and/or practice of failing to pay hourly wages, failing to pay overtime wages, failing to provide Class Members rest and meal periods without legal compensation. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. The Plaintiff is unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action. The disposition of all claims of the members of the Class in a class action, rather than in individual actions, benefits the parties and the Court. The interest of the Class Members in controlling the prosecution of separate claims against Defendants is small when compared with the efficiency of a class action.

## COLLECTIVE ACTION ALLEGATIONS

83. Plaintiff seeks to represent all non-exempt employees of Defendant CMS (whether or not in a union, whether or not working with a loan-out company) paid or owed wages during the period beginning no earlier than three years prior to the filing of the August 13, 2025, Complaint to the date of mailing of the FLSA Opt-In Notice (such persons are referred to hereafter as "Collective Action Members.")

84. Plaintiff is similarly situated to the Collective Action Members in that

Plaintiff and the Collective Action Members were employed by Defendants and in that Defendants did not pay Plaintiff and the Collective-Action Members their overtime and/or minimum wages when due.

85. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).

86. All Collective-Action Members should be given notice and be allowed to given their consent in writing to participate in—in other words, to opt into—the collective action pursuant to 29 U.S.C. § 216(b).

**FIRST CAUSE OF ACTION**

**Failure to Timely Pay Wages; Continuing-Wage Penalties**

(Continuing Wages, Code § 201.3, 201.5, 201.6, 203, and/or 204 as well as §558.1 as to the Individual Defendants
On Behalf of Plaintiff and the Class Against All Defendants)

87. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

88. Defendants employed Plaintiff, yet the Plaintiff was not paid all wages accrued upon separation from employment.

89. Plaintiff seeks continuing-wage penalties against Guice and Low under Labor Code sections 203 and 558.1 based on the particular conduct each is alleged to have undertaken in causing the covered failure to pay wages. The underlying payment provisions identify the applicable payment obligations; the claim against each Individual Defendant is not based solely on that defendant's corporate office or title.

90. Plaintiff and Class Members consistently worked more than 6-hour and/or 12-hour shifts. However, they were required to keep their walkie talkies, radios and/or cell phones on their persons, turned on and audible at all times, including during their rest periods and meal breaks and/or they were precluded from leaving the set and its immediate environs during their breaks, all due to the requirements of industry practice as detailed in Exhibits 7-11. Accordingly, they were denied their breaks and are entitled to an additional thirty minutes of wages for each faux meal break, funds which remain unpaid.

91. Defendants' failure to compensate Plaintiff and Class Members within the time for which provision is made by sections 201.3, 201.5, 201.6, 203 and/or 204 of the Code, despite their knowledge of their obligation to do so, was and is "willful" as the word is used in section 203.

92. Pursuant to section 203 of the Code, Plaintiff and Class Members are entitled to continuing wages from Defendants in an amount according to proof, and Plaintiff and Class Members are entitled to such penalties in the amount of at least $350,000. Plaintiff and Class Members are also entitled to recover costs and reasonable attorneys' fees under section 218.5 of the Code.

**SECOND CAUSE OF ACTION**
(Failure to Provide Compliant Pay Stubs, Code § 226(a)
On Behalf of Plaintiff and the Class Against Defendants)

93. The Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

94. Defendants failed to provide Plaintiff and Class Members with wage statements conforming to the requirements of section 226(a) of the Code. For example, the wage statements failed to report all accrued premium wages owing on account of missed, tardy or truncated meal periods and rest breaks; failed to report the legal name and address of the employer; failed to report gross or net wages earned; and failed to report all hours worked and rates. As a result neither Plaintiff nor other Class Members could promptly and easily determine from the wage statement alone all required data.

95. The foregoing was intentional misconduct of Defendants that injured Plaintiff and Class Members insofar as they were deprived of information to which they were legally entitled, including but not limited to all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

96. The failure of Defendants to provide compliant wage statements violates section 226(a) of the Code. Accordingly, Plaintiff and Class Members are entitled to damages in an amount according to proof and costs and reasonable attorney's fees in

accordance with the provisions of Code section 226(e), all according to proof. The Plaintiff is entitled to an amount according to proof of at least $50, not including interest thereon, reasonable attorneys' fees and cost of suit.

**THIRD CAUSE OF ACTION**
(Failure to Provide Rest Breaks and Meal Periods, Code § 226.7, 512 and IWC Wage Orders 4 or 12
On Behalf of Plaintiff and the Class Against Defendants)

97. The Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

98. At all times relevant, sections 226.7 of the Code and IWC Wage Order 12 provided that employees must receive rest periods of  at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

99. By its failure to provide required rest breaks and meal periods to Plaintiff and Class Members, Defendants willfully violated the provisions of Code sections 226.7, 512 and IWC Wage Orders 4 or 12.

100. The Plaintiff and Class Members were not permitted to leave the set of the Production for any purported rest periods or meal breaks. The Plaintiff and Class Members were required to be available via radio or cell phone at all times.

101. Because Defendants failed to properly provide the proper meal breaks or rest breaks, it is liable to Plaintiff and Class Members for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods or rest breaks were not provided, pursuant to Code section 226.7, 512 and IWC Wage Order 4 or 12.

102. Plaintiff seeks the meal-period and rest-period premium wages authorized by Labor Code section 226.7 for the workdays on which the respective requirements were violated, together with other relief authorized by law. Plaintiff separately seeks wages for compensable work that was not paid.

103. Both Guice and Low were aware of the policy and practice of confining meals to the set and prohibiting crew from leaving the set until after wrap.  Shuttles from distant crew parking locations to and from set were not available to crew save for when

they were working off the clock, without required compensation, before their call time and after their wrap.

104. As a result of the unlawful acts of the Defendants, Plaintiff and Class Members have been deprived of premium wages, and/or other compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, fees, and costs.

**FOURTH CAUSE OF ACTION**
(Damages for Unpaid Overtime Compensation,
Code §§ 510, 515, 558.1 and 1194.
On Behalf of Plaintiff and the Class Against All Defendants)

105. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

106. During Plaintiff's employment by Defendants, Plaintiff, as well as Class Members, worked many hours, including overtime, without proper compensation for work performed, as required by law.

107. Plaintiff and Class Members are entitled to recover such unpaid overtime under section 1194 of the Code in an amount according to proof. The Plaintiff and Class Members are entitled to recover costs and reasonable attorneys' fees under section 1194 of the Code.

**FIFTH CAUSE OF ACTION**
(Damages for Unpaid Minimum Wages,
Code §§ 1194, 1194.2 and 1198.
On Behalf of Plaintiff and the Class Against All Defendants)

108. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

109. Plaintiff and the Class Members worked many hours for Defendants, without compensation for work performed, as required by law. Both delinquent payment and non-payment of minimum wages violate the state statute requiring the payment of a minimum hourly wage. See, Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993).

110. Plaintiff seeks unpaid minimum wages and liquidated damages to the extent authorized by Labor Code sections 1194 and 1194.2, calculated using the applicable minimum wage during the relevant period and the compensable hours for which the required wages were not paid. Plaintiff seeks liquidated damages for hours paid dehors the required date, both for final wages and for wages prior to the final week.

111. Plaintiff and Class Members are entitled to recover liquidated damages under section 1194.2 of the Code in an amount according to proof in an amount for Plaintiff according to proof. The Plaintiff and Class Members are entitled to recover costs and reasonable attorneys' fees under section 1194 of the Code.

## SIXTH CAUSE OF ACTION

(Failure to Reimburse Necessary Expenses, Code §2802
On Behalf of Plaintiff and the Class Against All Defendants)

112. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

113. In discharge of their duties, Defendants required Plaintiff and Class Members to make purchases, maintain and/or rent equipment for their work on the set of a motion picture. Defendants required the Plaintiff and Class Members to use their personal cellphones and/or computer equipment, but Defendants did not reimburse the workers for such use.

114. Pursuant to section 2802 of the Code, Plaintiff and Class Members are entitled to reimbursement of their out-of-pocket expenses from Defendants and damages in addition to interest thereon, attorney's fees and costs.

115. Defendants required Plaintiff to use his personal cellphone for work-related communications during the Production. Plaintiff used that service in performing his assigned work, but Defendants did not reimburse the necessary business expense associated with that use.

116. "The purpose of this statute is to prevent employers from passing their operating expenses on to their employees." Cochran v. Schwan's Home Serv., Inc., 228

Cal.App.4th 1137, 1144 (2014) (internal quotation marks and citation omitted). The employer's duty to reimburse its workers is triggered if the employer knew or had reason to know the employee has incurred an expense. Stuart v. Radioshack Corp., 641 F. Supp. 2d 901, 904 (N.D. Cal. April 30, 2009). "Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." Id.

117. Code section 2802(c) provides, in part, that "the term 'necessary expenditures or losses shall include all reasonable costs, including but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

118. Code section 2804 mandates that this statutory right cannot be waived: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State." Code § 2804.

**SEVENTH CAUSE OF ACTION**

(Unfair Business Practices Business and Professions Code section 17200 *et seq.* On Behalf of Plaintiff and the Class Against All Defendants)

119. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

120. The wage-payment and compensation practices alleged above constitute the unlawful business practices on which Plaintiff bases this claim. Plaintiff lost money as a result of those practices, including earned compensation that was withheld.

121. Plaintiff seeks restitution of amounts in which he and the represented class members had a vested interest, including earned wages, to the extent recoverable under Business and Professions Code section 17203.

122. As to Guice and Low, Plaintiff bases this claim on the particular unlawful practices in which each personally participated or over which each exercised the requisite control, as specifically alleged above, and not merely on the acts of the corporate defendant with which each was affiliated.

123. Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiff alleges that Defendants engaged in unfair business practices in California by the above-described failure to timely pay all wages due including overtime wages and as otherwise detailed herein.

124. With respect to CMS and Low, those Defendants have consistently suffered and permitted crew such as Plaintiff to work under film permits which indicate CMS is the producer and employer, as well as normal industry call sheets which indicate CMS is the producer and employer, in the matter at issue explicitly stating that "CMS PRODUCTIONS" is the "PROD[uction] COMPANY," all in the upper left hand corner of page one, the area traditionally reserved to identify the Production Company which is running the matter at issue. Exhibit 4.2. In addition, the wage statements issued to crew often, as here, refer to "CMS Productions, Inc." as the "PRODUCTION COMPANY EMPLOYER," all as mandated by statute which requires the provision of the name of the "legal" employer on wage statements. Code §226(a). Both Wage Order 4 and 12 provide that "'Employ' means to engage, suffer, or permit to work." ¶2(D).

125. By reason of the above referenced actions (including allowing the issuance of film permits identifying CMS as the producer; issuing Call Sheets stating that "CMS PRODUCTIONS" was the "PROD. CO."; funding payment of wages with wage statements issued to crew often, as here, which refer to "CMS Productions, Inc." as the "PRODUCTION COMPANY EMPLOYER" [all as mandated by statute which requires the provision of the name of the "legal" employer on wage statements -- Code §226(a)], Low and CMS have improperly led the crew to believe that CMS was their employer, the entity which would and could pay their wages in timely fashion when Low and CMS knew that they would disclaim any responsibility to pay wages in the event that NCI failed to do so in timely fashion

126. Defendants' violation of California wage and hour laws as herein articulated constitutes a business practice because Defendants' aforementioned acts and omissions were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiff.

127. As a result of Defendants' unfair and unlawful business practices, Defendants have reaped unfair and illegal profits during the relevant time period herein at the expense of Plaintiff and the Class Members and members of the public. This Court should Order that Defendants should disgorge their ill-gotten gains and to restore them to Plaintiff and the Class Members.

128. The actions of Defendants entitle Plaintiff to seek the remedies available under section 17200 *et seq*. Plaintiff seeks full restitution of said amounts from Defendants, as necessary and according to proof, to restore any and all amounts—including interest—withheld, acquired, or converted by Defendants by means of the unfair practices complained of herein. Defendants should be required to disgorge their profits earned in following the practices alleged herein. Plaintiff, on behalf of himself, as well as on behalf of the general public, further seeks attorney fees and costs pursuant to sections 218.5 of the Code and 1021.5 of the Code of Civil Procedure. In addition, the Plaintiff seeks the appointment of a receiver, as necessary, to implement changes to the CMS practices and procedures involving employment and paying temporary workers so they comply with law in the future.

## EIGHTH CAUSE OF ACTION

(Failure to Provide Employment Records Upon Request Code § 226(b)
On Behalf of Plaintiff Against CMS)

129. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

130. Pursuant to Labor Code section 226(b), an employer shall afford current and former employees the right to inspect or copy the records pertaining to that current or former employee, upon reasonable request to the employer.

131. Plaintiff has requested that Defendants CMS, and LOW permit inspection or copying of Plaintiff's employment records pursuant to Labor Code section 226(b). **Exhibit 12** is a true and correct copy of the September 26, 2022, record request from Plaintiff Day to Defendants Low and CMS requesting such documents as well as those to which Day is entitled under Code §§432 and 1198.5. Defendants CMS and LOW failed to provide Plaintiff his employment records within 21 days of the request.

132. Pursuant to Labor Code Section 226(b) and (f), Plaintiff is entitled, and hereby seeks to recover from Defendants CMS and LOW a seven-hundred-fifty dollar ($750) penalty, reasonable attorney's fees, and the costs of bringing this cause of action.

## NINTH CAUSE OF ACTION

(Failure to Provide Employment Records Upon Request Code § 1198.5
On Behalf of Plaintiff Against CMS)

133. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

134. Pursuant to Labor Code section 1198.5, an employer shall make the contents of an employee's personnel records available for inspection.

Plaintiff requested that Defendants CMS and LOW permit inspection or copying of the personnel records pursuant to Labor Code section 1198.5. Defendants CMS and LOW have failed to provide Plaintiff with an opportunity to inspect or copy the employment records within 30 days of the request. Pursuant to Labor Code Section 1198.5(k), Plaintiff is entitled, and hereby seeks to recover from Defendants CMS and LOW a seven-hundred-fifty dollar ($750) penalty, reasonable attorney's fees, and the costs of bringing this cause of action.

## TENTH CAUSE OF ACTION

(Breach of Contract of Employment on behalf of Plaintiffs and Class Members Against Corporate Defendants)

135. Plaintiff repleads, realleges, and incorporates by reference each and every allegation set forth in the Complaint.

136. In this matter, unlike many other motion pictures, there was no explicit

written contract of employment between Plaintiffs and Class Members on the one hand, and Defendants on the other.

137. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am, Inc. 161 Cal. App. 4th 172, 182 (2008).

138. The elements of a cause of action for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Coles v. Glaser, 2 Cal. App. 5th 384, 391 (2016).

139. Every implied contract for employment within California incorporates by implication the requirements of the FLSA and the Code.

140. By each Corporate Defendant's conduct requesting, accepting, and agreeing to compensate Plaintiff's services as well as the services of Class Members, Plaintiff as well as the Class and CMS as well as NUC entered into an implied-in-fact employment agreement.

141. The agreement required payment of compensation and payment terms in accord with California law in exchange for work on the Production. Plaintiff and the Class performed the requested services.

142. The contracting Corporate Defendants breached the agreement by failing to pay the compensation promised, causing Plaintiff and the Class damages according to proof.

143. Plaintiff and Class Members diligently worked for Defendants and fulfilled their obligations under their contracts of employment. Defendants breached their implied contracts of employment with Plaintiff and Class Members when they: (1) failed to provide Notice of the Plaintiffs' and Class Members' right to additional wages on account of the alleged failure to pay premium wages for rest breaks and/or meal periods, much less pay such wages; (2) failed to compensate Plaintiffs and Class Members for their use of

personal cell phones and/or computer equipment; (3) failed to timely pay for all hours worked, never paying premium wages for rest breaks, routinely reusing illegal rounding and improperly conceived de minimis claims, deducting exactly thirty or exactly sixty minutes from faux days of work, often paying wages more than a week after the promised and legally required "next week" – instead paying many days late, often beyond even the extended times permitted by Section 204 of the Code.

## ELEVENTH CAUSE OF ACTION

(Fair Labor Standards Act On Behalf of Plaintiff and Similarly Situated Collective Action Members Against **CMS, NCI, Guice, and Low**)
**29 U.S.C. §§ 206, 207, and 216(b)**

144. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

145. Plaintiff is informed and believes, and on that basis alleges, that Defendants are employers engaged in an enterprise in interstate commerce pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The violations of the FLSA alleged herein had a direct effect on and were committed within the State of California, County of Los Angeles, impacting Plaintiff and other similarly situated employees. The corporate Defendants are each are engaged in interstate commerce, and each have annual sales in interstate commerce in an amount in excess of $500,000.

146. Plaintiff was not timely paid his wages. Plaintiff and Collective Action Members worked many hours each day during their employment as herein alleged.

147. Plaintiff was employed as a nonexempt crew member on the Production. Plaintiff alleges that CMS and NCI were his employers based on their respective participation in his employment and compensation, as described above. Plaintiff alleges that Guice and Low were employers within the meaning of 29 U.S.C. § 203(d) based on their respective operational involvement in the employment and compensation practices specifically alleged above. Under the FLSA, Plaintiff and Collective Action Members are entitled to recover from Defendants their liquidated damages for hours worked, as well as costs and attorney's fees.

148. Defendants failed to compensate Plaintiff and Collective Action Members as required by the FLSA. The regular payday applicable to Plaintiff's wages for that workweek was August 26, 2022. Plaintiff did not receive the minimum wages required by 29 U.S.C. § 206 on that payday. The paycheck reflected in the September 9, 2022 wage statement was not prepared until September 9, 2022, or later. Defendants' failure to pay the required federal minimum wages on the applicable regular payday violated the FLSA. Plaintiff seeks the relief authorized for that violation, with appropriate credit for wages subsequently paid.

149. Defendants' violations were willful and intentional.

150. Plaintiff and Collective Action Members are entitled to damages for unpaid Wages.

**WHEREFORE**, Plaintiff prays judgment as follows:

1. That the Court certifies a Class Action or Actions.

2. That, under the First Cause of Action, it be adjudged that the failure of Defendants to make payment of Plaintiff's and Class Members' wages was in violation of section 201.3, 201.5, 201.6, 203, 204 and/or 204b of the Code, and was "willful" as that word is used in section 203 of the Code, and that the Court enter judgment against Defendants in favor of Plaintiff and Class Members. This Court should enter judgment in favor of Plaintiff and the Class, in the amount of not less than $350,000, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 218.5.

3. That, under the Second Cause of Action, Code § 226(a), Failure to Provide Compliant Wage Statements, and Wage Orders 4 and/or 12, this Court enter judgment in favor of Plaintiff, in an amount of at least $50, not including interest thereon, reasonable attorneys' fees and cost of suit, and enter judgment in favor of the Class Members against Defendants in the amount of damages, interest, and costs, according to proof, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 226(e).

4. That, under the Third Cause of Action, Code §§ 226.7, 512 and Wage Orders 4 and/or 12, Failure to Provide Rest Breaks and Meal Periods, this Court enter

judgment in favor of Plaintiff and the Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code.

5. That, under the Fourth Cause of Action, Code § 510, 515, and 1194 and Wage Orders 4 and/or 12, Failure to Provide Pay Proper Overtime, this Court enter judgment in favor of Plaintiff and Class Members in the amount of unpaid overtime wages according to proof, including interest thereon, reasonable attorneys' fees and cost of suit, and enter judgment against Defendants in the amount of damages according to proof, interest thereon, reasonable attorneys' fees and cost of suit.

6. That, under the Fifth Cause of Action, Code §§ 1194 and 1198 and Wage Orders 4 and/or 12, Failure to Provide Pay Proper Minimum Wages, this Court enter judgment in favor of Plaintiff and Class Members and award them their damages, penalties, liquidated damages, reasonable attorney's fees and costs of suit, all according to proof, of no less than $50 for Plaintiff, pursuant to section 218.5, 1194, 1194.2, 1198 and other relevant sections of the Code.

7. That, with respect to the Sixth Cause of Action, Code § 2802 and Wage Orders 4 and/or 12, Failure to Reimburse Business Expenses, this Court enter judgment in favor of Plaintiff and Class Members against all Defendants in an amount according to proof, interest thereon, costs and reasonable attorney's fees in accordance with Code section 2802(c).

8. That, with respect to the Seventh Cause of Action, it be adjudged that Defendants' violations of the applicable Wage Order and above cited sections of the Code, and violated section 17200 *et seq*. of the California Business and Professions Code. Accordingly, Plaintiff requests that the Court order Defendants to pay restitution with interest to Plaintiff and the Class Members. In addition, Plaintiff requests that the Court award Plaintiff's reasonable attorneys' fees and costs, pursuant to section 218.5 of the Code and section 1021.5 of the California Code of Civil Procedure.

9. That, with respect to the Eighth Cause of Action, Code § 226(b) and Wage

Orders 4 and/or 12, Payroll Records, this Court enter judgment in favor of Plaintiff against Defendant in the amount of $750, reasonable attorney's fees, and the costs of bringing this cause of action under Labor Code Section 226(b) and (f).

10. That, with respect to the Ninth Cause of Action, Code § 1198.5 and Wage Orders 4 and/or 12, Personnel Records, this Court enter judgment in favor of Plaintiff against Defendant in the amount of $750, reasonable attorney's fees, and the costs of bringing this cause of action pursuant to Labor Code Section 1198.5(k).

11. That, with respect to the Tenth Cause of Action, Breach of Implied Employment Contract, this Court enter judgment in favor of Plaintiff and Class Members against all Defendants in an amount according to proof, interest thereon, costs and such other reasonable relief as may be appropriate in the circumstance.

12. That, with respect to the Eleventh Cause of Action, FLSA, this Court enter judgment in favor of Plaintiff and Members of the Collective Action against all Defendants in an amount according to proof, interest thereon, attorneys' fees, costs and such other reasonable relief as may be appropriate in the circumstance.

13. For such further relief as the Court may order, including attorney's fees, costs, and interest pursuant to Code sections 218.5 and 218.6, and Code of Civil Procedure section 1021.5, in an amount according to proof.

DATED: September 10, 2026

Respectfully submitted,

HARRIS & RUBLE

*/s/ Alan Harris*

Alan Harris
*Attorney for Plaintiff*

# INDEX TO EXHIBITS

| | |
|---|---|
| Exhibit 1 | A sample of an ad agency script and storyboards for a television commercial. |
| Exhibit 2 | A partially redacted, typical Association of Independent Commercial Producer's ("AICP") Film Production Cost Summary for a Neutrogena commercial. |
| Exhibit 3 | AICP Bid Form |
| Exhibit 4.1 | Plaintiff's September 9, 2022, Wage Statement (Partially Redacted). |
| Exhibit 4.2 | Call Sheets for the Production reflecting work on August 16 and 17, 2022. |
| Exhibit 4.3 | Call Sheets for the Production reflecting work in 2024. |
| Exhibit 5 | Call sheets with references to walkie channels (Partially Redacted). |
| Exhibit 6 | Cell Phone Maintenance Payments in Los Angeles (Partially Redacted). |
| Exhibit 7 | "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"), the version issued in 2019. |
| Exhibit 8 | "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"), version issued 2021. |
| Exhibit 9 | Ca. Film Commission Code of Professional Responsibility, 11/2020 |
| Exhibit 10 | AICP Code of Professional Responsibility, 2019 |
| Exhibit 11 | Warner Bros. Code of Professional Responsibility |
| Exhibit 12 | Plaintiff's prefiling record request to CMS dated September 26, 2022 (Partially Redacted). |
| Exhibit 13 | Plaintiff's FLSA Consent Form |